Ashburn, J.
The record in this ease presents to us the single question, Was the finding and judgment of the Dis *651 triet Court erroneous ? The findings and judgment of that court were upon the second_ defense alone. It was held “ that the statements contained in the second defense of the answer are true as therein alleged, and for that reason the-court are of opinion that said action ought to be dismissed, and that the defendants are entitled to judgment.”
To determine the correctness of this finding and judgment of the District Court, we must ascertain the nature and legal effect of the second defense, and the state of the law of appeals from the action of county commissioners in proceedings to improve a county road.
The legal substance of the second defense is embraced in this allegation, “ The plaintiff’ did not, within the time limited by law, take an appeal from any of the decisions or action of the said board of county commissioners.”
In finding this answer to be true, and reversing the judgment of the Common Pleas, the District Court found and held that the case was one in which an appeal could be taken from the final order made by the county commissioners.
If the ease was appealable, the plaintiff had an adequate remedy at law, and can have no aid in equity; if not appealable, then, upon the facts set out in his petition, uncontroverted, he might invoke the aid of equity, and have an injunction.
What then was the law of appeals in this class of cases ?
The act of 1867 (8. & 8. 671), under the provisions of which, proceedings, in this road improvement, were commenced, in terms authorized an appeal to the Probate Court, from the assessment of damages, to any one who felt aggrieved by the assessment in his case, and pointed out how it should he prosecuted. No appeal, however, was provided from the final order of the county commissioners granting or refusing the improvement. We are of opinion that it was an intentional omission.
No- appeal being provided for in the act, we must look, elsewhere for' such right, if any there he.
It may be claimed that an appeal is provided for in sec *652 tion 18 of the commissioners’ act (S. & C. 247). This section clearly applies to all cases where the county eornmis■sioners, in the discharge of their official duties, are called upon to act judicially, and to no others.
Section 18 is as follows: “ That if any person or persons shall conceive him, her, or themselves aggrieved by the decision of the county commissioners in any case, such person of persons may, within fifteen days thereafter, appeal to the next court of Common Pleas, notifying the commis.sioners of such appeal at least ten days before the time of trial, which notice shall be in writing and delivered personally to the commissioners, or left with the auditor of the county, and the said court shall, at their next session, hear .and determine the same, which decision shall be final.”
In the case of Bowersox et al. v. Watson et al., and Fisher v. Wilgus et al., 20 Ohio St. 496, the court held, in giving construction and application to the above section of the commissioners act: “ Appeals are allowed from decisions •of boards of county commissioners, made only in cases founded upon claims and demands against the county in its •quasi corporate capacity.”
This ruling we think correct.
The questions in controversy, touching the subject matter of this action, are such that the county, in its quasi corporate capacity, has no direct interest, and the action •required of the commissioners is clearly non-judicial.
The improvement, though local, is of general public interest. Unless it is of public necessity, it will not be ordered. The petitioners for the improvement represent the supposed needs of the public as well as themselves. The persons •who are qualified petitioners for this kind of improvement may be denominated a political body of special voters, and the commissioners, who count their votes under the statutes, are judges to count their votes and ascertain whether a majority of legal votes, in the election district of four miles, are in favor of the improvement. . If such majority is found, then the commissioners, as agents of these voters, *653 under the law appoint sub-agents, called viewers, who are,, among other things, charged with the duty of reporting to-the commissioners whether or not the contemplated improvement is a public necessity. If the report is in the affirmative, the improvement is ordered — elected. All this is-political and not judicial action, and no appeal is allowed.
The judge who delivered the opinion in the case already named at pages 507-8, says, “ The necessity and propriety of these improvements are ascertained by the opinion of' the commissioners, and the opinions or judgments of the judges of the Courts of Common Pleas ought not to be-substituted without express or clearly implied authority. For we take it that, as an appeal lies from the order granting an improvement, it also lies from a refusal to grant it.”
In that event, the consequences would be such, we think,, as were never contemplated by the legislature. If, on appeal, the Court of Common Pleas, holding an opinion different from the commissioners, should order the improvement, we should have the anomalous case of an appropriation of private property to public use without express authority of law, by a tribunal strange to the statute, and wholly without authority to carry its judgment into execution.
Judgment of the District Court reversed, and action remanded to the Court of Common Pleas for further proceedings.
Scott, Chief Judge, Day, ’Wright, and Johnson, JJ.„. concurred.